UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THOMSON INC. n/k/a TECHNICOLOR USA,
INC., TECHNICOLOR, INC., and
TECHNICOLOR LIMITED,

          Plaintiffs,

v.

AMERICAN INTERNATIONAL SPECIALITY
LINES INSURANCE CO., COMMERCE &
INDUSTRY
INSURANCE CO., and
CHARTIS PROPERTY & CASUALTY CO.,

          Defendants.

Case No. 1:10-cv-01652-TWP-MJD

## **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

### I. Introduction

Pursuant to F. R. Civ. P. 56, Plaintiffs Thomson Inc. k/n/a Technicolor USA, Inc., Technicolor, Inc. and Technicolor Limited (collectively "Technicolor") are entitled to summary judgment that four (4) claims made pollution liability insurance policies sold by the Defendants (collectively "Chartis") provide coverage for the clean-ups at three of Technicolor's film processing laboratories. Two of these laboratories were located in California, and one was located in the United Kingdom. The solvents used in film processing operations at each site have impacted the soil and groundwater, and Technicolor has spent over $6 million to address those impacts. Chartis has refused coverage.

1

With permission of the Court, Technicolor has filed herewith three separate briefs in support of this motion – one brief for each site.

## II. The Consolidated Film Industries Site

The Consolidated Film Industries site ("CFI Site") in California was operated from 1924 to 2002. To date, Technicolor has spent approximately $4.4 million in cleanup costs. Technicolor is entitled to summary judgment that Chartis owes those costs under the Chartis policies, policies which collectively provide coverage from 2001 to 2016.

Chartis denied the claim on two bases. First, it alleges Technicolor's CFI claim – which consists of two claims by the State of California, in 2004 and 2007 and the discovery of new pollution conditions in 2005 – is the same claim made in 1990 by the state. Chartis is incorrect. As shown in the brief, the 1990 claim was over. After 1990, the state gave a "no further action" status on soil, and only directed Technicolor to follow further directives. No further directives were issued. The state did not do anything for thirteen years, until Technicolor provide new data in 2004. In 2004, the state made a new comprehensive claim for a site-wide soil and groundwater investigation. The 2005 pollution conditions were new, arising from excavation done in 2004. The 2007 claim also was new, asking for a new remedy (vapor intrusion barriers) responding to a new problem (soil gas) in new, not even yet built structures (new buildings).

Each of the 2004, 2005 and 2007 matters qualify as new **Claims** or **Pollution Conditions** as those terms are defined in the policies. The definitions in the policies are very imprecise and subject to very broad or very narrow constructions. That makes them ambiguous. At the very least, Technicolor's construction of these terms is a reasonable

one.  Thus, even if Chartis's all-encompassing construction, sweeping up everything that has taken place at this site as one **Claim** or the same **Pollution Condition**, was reasonable – and it is not, as it would essentially render the coverage under the policies illusory -- that is simply evidence of ambiguity.  If there is more than one reasonable construction of a policy term, it is ambiguous and must be construed in favor of coverage. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985) (citations omitted).

Second, Chartis asserts a late notice defense to deny coverage under two of the three policies.  This defense has no relevance to this policy, which has sufficient limits to cover the claim. But even if Chartis' claim was not moot, it is wrong.  Chartis actually did receive timely notice of the claim prior to the expiration of the first policy. Moreover, because these provided continuous coverage, as a number of courts have recognized, the rationale for the claims made cutoff vanishes since Technicolor would be getting only what it paid for, coverage for claims made in the policy periods.

### III. The North Hollywood Site

The North Hollywood Site in California was operated from 1964 to 2011.   To date, Technicolor has spent almost $800,000 in cleanup costs.  Technicolor is entitled to summary judgment that Chartis owes those costs under two of the Chartis policies – the one effective in 2001 and the other effective in 2010.

These policies expressly cover the cleanup at this site under   **Coverage K** of the 2001 policy and as **Claims** or **Pollution Conditions** under the 2010 policy.  Chartis relies on a narrow construction of the **Remedial Plan** to deny **Coverage K** costs.  Chartis claims the **Remedial Plan** has specific cut-off dates, but those dates are not included in the **Remedial Plan** document itself.  As with the CFI claim, Chartis relies on a too

3

narrow interpretation of the terms **Claim** and **Pollution Condition** to deny the other part of these costs. Just as with the CFI Site, Technicolor's reasonable interpretation of those terms does not support the denial.

## IV.  The West Drayton Site

The West Drayton site in the United Kingdom was operated from 1935 to 2008. To date, Technicolor has spent over $860,000 in cleanup costs. Technicolor is entitled to summary judgment that Chartis owes those costs under the Chartis policy that was effective from 2001 to 2016.

As with the North Hollywood site, both **Coverage K** and the new **Claim** and **Pollution Condition** coverages apply to this site. Chartis again relies on a narrow, coverage limiting interpretation **Remedial Plan** to deny some **Coverage K** costs. It claims that just one activity is covered and that some of the claimed costs are not related to this single activity. But, the **Remedial Plan** contains a list of seven <u>covered</u> activities. Most of the **Coverage K** claim costs are related to them.  As to other costs – which constitute a new **Claim** or new **Pollution Condition** as those terms are defined in the policy -- Chartis has not ever made a coverage decision, but has not paid any costs.

Finally, Technicolor and Chartis disagree as to the amount of the self-insured retention that applies to North Hollywood and West Drayton sites under **Coverage K** in the 2001 policy. There is an endorsement which expressly reduced the self-insured retention from $500,000 to $200,000. Chartis claims this endorsement does not apply to the coverage at issue. That is simply incorrect, as the endorsement shows on its face. But at the very least, Chartis has created another ambiguity which must be construed in favor of coverage.

Respectfully submitted,

Plews Shadley Racher & Braun LLP

*s/ Todd G. Relue*
Attorneys for Thomson Inc. n/k/a
Technicolor USA, Inc., Technicolor,
Inc., and Technicolor Limited

George M. Plews, Atty. No. 6274-49
Karen B. Scheidler, Atty. No. 21816-49
Todd G. Relue, Atty. No. 29053-49
Plews Shadley Racher & Braun LLP
1346 North Delaware Street
Indianapolis, IN  46202-2415
Telephone: (317) 637-0700
Facsimile: (317) 637-0710

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Joseph A. Hinkhouse
Michael J. Morrison
Richard A. Hodyl
Philip K. Beth
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Street, Suite 3400
Chicago, IL  60601
jhinkhouse@hww-law.com
mmorrison@hww-law.com
rhodyl@hww-law.com
pbeth@hww-law.com

*s/ Todd G. Relue*